1
2          O
3
4
5
6
7
8              **UNITED STATES DISTRICT COURT**
9              **CENTRAL DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11 VICTOR M. OLARTE, | ) Case No. ED CV 12-835-SP |
| 12        Plaintiff, | ) |
| 13   v. | ) **MEMORANDUM OPINION AND** |
| | ) **ORDER** |
| 14 MICHAEL J. ASTRUE, | ) |
| 15 Commissioner of Social Security | ) |
|    Administration, | ) |
| 16        Defendant. | ) |
| 17 | ) |

18
19                      **I.**
20                **INTRODUCTION**
21        On May 24, 2012, plaintiff Victor M. Olarte filed a complaint against
22 defendant Michael J. Astrue, seeking a review of a denial of Disability Insurance
23 Benefits ("DIB") and Social Security Income ("SSI").  Both plaintiff and defendant
24 have consented to proceed for all purposes before the Magistrate Judge pursuant to
25 28 U.S.C. § 636(c).  The parties' briefing is now complete, and the court deems the
26 matter suitable for adjudication without oral argument.
27        Plaintiff presents two disputed issues for decision: (1) whether the
28 Administrative Law Judge ("ALJ") failed to obtain an explanation or persuasive

evidence to justify the acceptance of the testimony by the vocational expert ("VE"), which deviated from the Dictionary of Occupational Titles ("DOT"), thereby failing to demonstrate that plaintiff can perform other jobs in the national economy; and (2) whether the ALJ properly discredited plaintiff's subjective complaints and credibility.  Plaintiff's Memorandum in Support of Complaint ("Pl.'s Mem.") at 10-14; Defendant's Memorandum in Support of Answer ("Def.'s Mem.") at 2-6.

Having carefully studied, inter alia, the briefs submitted by the parties and the Administrative Record ("AR"), the court finds that, as detailed herein, there is substantial evidence in the record, taken as whole, to support the ALJ's decision. First, the ALJ properly found the VE's testimony, which deviated from the DOT, as persuasive evidence demonstrating that plaintiff can perform other jobs in the regional and national economy.  Second, the ALJ properly discounted plaintiff's credibility and subjective complaints.  The court therefore affirms the Commissioner's decision denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 24 years old on the date of his August 23, 2010 administrative hearing, has a high school education and a year of college education. AR at 30, 42, 186, 199, 212.  His primary past relevant work was employment as a safety/security inspector, an apprentice mortician, and a caregiver to seniors.  *Id.* at 29, 30, 46, 56-58, 183, 212-13.  As a safety/security inspector, plaintiff worked at a manufacturing plant in which he was required to walk around, make observations, climb ladders, and carry weapons and notebooks.  *Id.* at 54, 55.  As part of his work as an apprentice mortician, plaintiff embalmed the deceased.  *Id.* at 56.  As part of his work as a caregiver, plaintiff awakened elderly patients, fed them, showered them, changed their diapers, carried them between their beds and wheelchairs, and transported them to and from meals.  *Id.* at 57, 183.  Each of these positions required plaintiff to use both hands.  *Id.* at 59-63.

1    Plaintiff applied for DIB and SSI on December 1, 2008. *Id.* at 25, 162. In the

2    application, plaintiff alleged he had been disabled since October 16, 2008, due to a

3    severe musculoskeletal impairment of the left arm, which resulted from an injury

4    sustained in a motorcycle accident in February 2006. *Id.* at 27, 46, 182, 185, 203.

5    Plaintiff's applications were denied initially and upon reconsideration, after which

6    he filed a request for a hearing. *Id.* at 25, 71-75, 80-85, 86-87.

7    On August 23, 2010, plaintiff, represented by counsel, appeared and testified

8    at a hearing before the ALJ. *Id.* at 42-53, 54-55, 56-57. The ALJ also heard

9    testimony from Joseph Mooney, a VE. *Id.* at 53-54, 55-56, 57-64. On October 8,

10    2010, the ALJ denied plaintiff's request for benefits. *Id.* at 25-31.

11    Applying the well-known five-step sequential evaluation process, the ALJ

12    found, at step one, that plaintiff was not engaged in substantial gainful activity since

13    October 16, 2008, his alleged disability onset date. *Id.* at 27.

14    At step two, the ALJ found that plaintiff suffered from a severe impairment of

15    the musculoskeletal system. *Id.*

16    At step three, the ALJ determined that the evidence demonstrates that

17    plaintiff does not have an impairment or a combination of impairments that meets or

18    medically equals any listing set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.

19    *Id.*

20    The ALJ then assessed plaintiff's residual functional capacity ("RFC")[1] and

21    determined that he could perform "light" work as defined in 20 C.F.R. 404.1567(b)

22    and 416.967(b), though limited to "only occasionally climb[ing] stairs but [not]

23

24    ————————————

      [1]    Residual functional capacity is what a claimant can still do despite

25    existing exertional and non-exertional limitations. *Cooper v. Sullivan*, 880 F.2d

26    1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step

      evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses

27    the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149,

28    1151 n.2 (9th Cir. 2007) (citation omitted).

climb[ing] ropes, ladders or scaffolds," since plaintiff "has no use of his left upper extremity . . . ." *Id.* at 27-28. In addition, the ALJ found that plaintiff "can occasionally balance, stoop, kneel, crouch and crawl." *Id.* at 28.

The ALJ found, at step four, that plaintiff was "unable to perform any past relevant work" as a safety/security inspector, apprentice mortician, and caregiver to seniors. *Id.* at 29.

At step five, based upon plaintiff's vocational factors and RFC, the ALJ found that "[c]onsidering [plaintiff's] age, education, work experience, and residual functional capacity, [plaintiff] has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." *Id.* at 30. The ALJ therefore concluded that plaintiff was not suffering from a disability, as defined by the Social Security Act, from October 16, 2008 through October 8, 2010, the date of the decision. *Id.* at 31.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council on February 24, 2012. *Id.* at 4-9. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g) (2010). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant

1   evidence which a reasonable person might accept as adequate to support a

2   conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

3   F.3d at 459.  To determine whether substantial evidence supports the ALJ's finding,

4   the reviewing court must review the administrative record as a whole, "weighing

5   both the evidence that supports and the evidence that detracts from the ALJ's

6   conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be affirmed

7   simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d

8   at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the

9   evidence can reasonably support either affirming or reversing the ALJ's decision,

10  the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.*

11  (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

12                                    **IV.**

13                              **<u>DISCUSSION</u>**

14  **A.     The ALJ Properly Found the VE's Testimony, Which Deviated From the**

15          **DOT, as Persuasive Evidence Demonstrating That Plaintiff Can Perform**

16          **Other Jobs in the Regional and National Economy**

17          Plaintiff contends the ALJ failed to "meet his burden of proof at step five to

18  demonstrate the existence of a significant number of jobs that [plaintiff] could

19  perform within his given limitations."  Pl.'s Mem. at 12.  Specifically, plaintiff

20  asserts the ALJ first failed to recognize that a conflicts exists between the VE's

21  description of the jobs he identified as performable by plaintiff and the DOT's

22  description of those jobs.  *Id.* at 10-12.  Plaintiff argues the ALJ then failed to

23  "solicit testimony to explain the VE's divergence from the DOT," as the ALJ was

24  required to do.  *Id.* at 11.  The court disagrees.

25          At step five, the burden shifts to the Commissioner to show that the claimant

26  retains the ability to perform other gainful activity.  *Lounsbury v. Barnhart*, 468

27  F.3d 1111, 1114 (9th Cir. 2006).  To support a step-five finding that a claimant is

28  not disabled, the Commissioner must provide evidence demonstrating that other

1   work exists in significant numbers in the national economy that the claimant can

2   perform, given his or her age, education, work experience, and RFC.  20 C.F.R.

3   §§ 404.1520(g), 416.920(g).

4          ALJs routinely rely on the DOT "in evaluating whether the claimant is able to

5   perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273,

6   1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. §§ 404.1566(d)(1)

7   (DOT is source of reliable job information), 416.966(d)(1) (same).  The DOT is the

8   rebuttable presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d

9   1428, 1435 (9th Cir. 1995).  An ALJ may not rely on a VE's testimony regarding

10  the requirements of a particular job without first inquiring whether the testimony

11  conflicts with the DOT, and if so, the reasons therefor.  *Massachi*, 486 F.3d at

12  1152-53 (citing Social Security Ruling ("SSR") 00-4p).[2]  But failure to so inquire

13  can be deemed harmless error where there is no apparent conflict or the VE provides

14  sufficient support to justify deviation from the DOT.  *Id.* at 1154 n.19.

15         In order for an ALJ to accept a VE's testimony that contradicts the DOT, the

16  record must contain "persuasive evidence to support the deviation."  *Id.* at 1153

17  (citing *Johnson*, 60 F.3d at 1435).  Evidence sufficient to permit such a deviation

18  may be either specific findings of fact regarding the claimant's residual functionality,

19  inferences drawn from the context of the VE's testimony, or a reasonable

20  explanation provided by the VE.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th

21  Cir. 1997) (citations omitted); *Massachi*, 486 F.3d at 1153.  SSR 00-4p, which the

22

23  _____

24         [2]      "The Commissioner issues Social Security Rulings to clarify the Act's
    implementing regulations and the agency's policies.  SSRs are binding on all
25  components of the [Social Security Administration].  SSRs do not have the force of
    law.  However, because they represent the Commissioner's interpretation of the
26  agency's regulations, we give them some deference.  We will not defer to SSRs if
    they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246
27  F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

28

1    Ninth Circuit has used as a persuasive authority, gives examples of several

2    reasonable explanations for deviating from the DOT.  SSR 00-4p; *Massachi*, 486

3    F.3d at 1153 n.19.  The examples include statements by the VE that: "the [DOT]

4    does not provide information about all occupations; information about a particular

5    job not listed in the [DOT] may be available elsewhere; and the general descriptions

6    in the [DOT] may not apply to specific situations."  SSR 00-4p.

7         Here, the VE testified that a hypothetical person with plaintiff's RFC could

8    work in jobs such as observation and report security monitor, security clerk, outside

9    deliverer, and storage rental clerk.  AR at 30, 59-60.  The VE testified that the DOT

10   classifies these jobs as "generally" requiring the use of both arms.  *Id.* at 30, 58-59,

11   63.  This testimony by the VE, that plaintiff – whom the ALJ found "has no use of

12   his left upper extremity" and "is not able to perform fine and gross manipulative

13   movements with the left hand" (*see id.* at 27, 29) – could perform the stated jobs, is

14   in apparent conflict with the DOT's classification of the jobs as bilateral.

15        Without the ALJ's prompting, however, the VE explained that despite the

16   "bilateral capacity" requirement, the positions of security monitor and security

17   clerk, which are light, semiskilled positions, "would be performable from a practical

18   point of view with the one armed ability . . . ."  *Id.* at 59.  The VE explained that

19   with these two positions, "there may be notes [that] have to be taken for the purpose

20   of writing incident reports, but otherwise [the job requirements would be] walking

21   and standing to check various locations, and to make sure there's no problems or

22   monitor an area within a warehouse or a manufacturing facility[,] . . . [and to]

23   observe and report . . . ."  *Id.*  Moreover, the VE stated that the positions would not

24   require "carrying a weapon or making arrests."  *Id.*  He then reported that more than

25   2,000 of these jobs are available in the regional economy.  *Id.* at 60.  As for the

26   positions of storage rental clerk and outside deliverer, which are light, unskilled

27   jobs, the VE testified that an individual with plaintiff's RFC would be able to

28   perform them because, for the storage rental clerk position, "[i]t involves a

                                         7

1   combination of security, observation, and report[ing] as well as someone [being]

2   present in the office to take telephone calls, [and] provid[ing] entrance to rental

3   holders," and for the outside deliverer position, it is "commonly known to be . . .

4   performable with one arm . . . ." *Id.* at 60.  The VE also reported that more than

5   2,000 of the two latter jobs are available in the regional economy.  *Id.*

6        The court finds the VE provided a reasonable explanation for deviating from

7   the DOT, and the ALJ properly determined the VE's explanation to be sufficiently

8   persuasive evidence that justifies the deviation.  *See id.* at 30-31; *Massachi*, 486

9   F.3d at 1153; SSR 00-4p.  The VE offered a reasonable explanation for the

10  discrepancy between the DOT and his testimony by indicating with sufficient clarity

11  that the DOT's general requirement of bilateral capacity may not apply in specific

12  job situations such as those he identified as performable by persons with plaintiff's

13  RFC.  *See* AR at 59-60; SSR 00-4p.  The ALJ explicitly referenced this explanation

14  for the discrepancy, noting the VE testified to the difference between the DOT's

15  listing of "all jobs as bimanual" and the jobs as they exist in significant numbers "in

16  the real world."  AR at 30.  Moreover, the ALJ found further support for the VE's

17  testimony in state agency reports, which found other similarly performable jobs.  *Id.*

18  at 30, 199-201, 212-13.

19       As plaintiff correctly asserts and defendant concedes in their briefing, the

20  ALJ did not specifically inquire as to whether the VE's testimony conflicts with the

21  DOT and what the VE's reasons were.  Pl's Mem. at 11; Def.'s Mem. at 3.  This

22  error was, however, harmless because the VE provided, without being asked,

23  reasons sufficient to justify deviation from the DOT.  AR at 58-60; *see Massachi*,

24  486 F.3d at 1154 n.19.

25       It was thus proper for the ALJ to rely on the VE's testimony to conclude that

26  positions such as those identified by the VE – with the specific examples the ALJ

27  cited being storage rental clerk and deliveryman – were available in significant

28  numbers to individuals with plaintiff's characteristics.  *See* AR at 30.  Accordingly,

1 the ALJ met his burden of proof at step five to demonstrate that plaintiff can

2 perform other jobs in the national economy.

3 **B.** **The ALJ Properly Discredited Plaintiff's Credibility and Subjective**

4   **Complaints**

5   Plaintiff argues that the ALJ improperly discredited plaintiff's testimony.

6 Pl.'s Mem. at 12-14. Specifically, plaintiff maintains that four of the ALJ's stated

7 reasons for finding plaintiff's claims of functional limitations not fully credible are

8 "legally and factually insufficient" because: (1) although the ALJ pointed to the fact

9 that plaintiff worked for a year after the accident, "[t]he ALJ cited no reasons for

10 disbelieving [plaintiff's] testimony" that his condition deteriorated over that period

11 such that he thereafter "could no longer work with the 'phantom pain' in his left

12 arm, his right shoulder pain, and the concentration difficulties that his pain causes";

13 (2) "the ALJ provided no rationale for his apparent inference that [plaintiff] must

14 not be in as much pain as he alleges simply because of his reluctance to take pain

15 medications" that cause side effects; (3) the ALJ's assertion that plaintiff would not

16 testify to his activities of daily living is "simply untrue," as plaintiff did testify

17 about reading, using the internet, and watching TV; and (4) the ALJ does not

18 explain why plaintiff's "lack of resources and non-reliance upon public assistance"

19 hurts plaintiff's credibility. Pl.'s Mem. at 13-14; *see* AR at 28-29. Thus, plaintiff

20 argues, the ALJ's "adverse credibility ruling should not be upheld." Pl.'s Mem. at

21 14.

22   A plaintiff claiming DIB or SSI carries the burden of producing objective

23 medical evidence of his or her impairments and showing that the impairments could

24 reasonably be expected to produce some degree of the alleged symptoms. *Benton ex*

25 *rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). But once the claimant

26 meets that burden, medical findings are not required to support the alleged severity

27 of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); *see also*

28 *Light*, 119 F.3d at 792 ("claimant need not present clinical or diagnostic evidence to

1    support the severity of his pain" (citation omitted)).

2         Instead, once the claimant has met the burden of producing objective medical

3    evidence, an ALJ can reject the claimant's subjective complaint "only upon

4    (1) finding evidence of malingering, or (2) expressing clear and convincing reasons

5    for doing so." *Benton*, 331 F.3d at 1040. The ALJ may consider the following

6    factors in weighing the claimant's credibility: (1) his or her reputation for

7    truthfulness; (2) inconsistencies either in the claimant's testimony or between the

8    claimant's testimony and his or her conduct; (3) his or her daily activities; (4) his or

9    her work record; and (5) testimony from physicians and third parties concerning the

10   nature, severity, and effect of the symptoms of which the claimant complains.

11   *Thomas v. Barnhart*, 278 F.3d at 947, 958-59 (9th Cir. 2002). Although a lack of

12   medical evidence supporting a plaintiff's alleged symptoms cannot be the sole

13   reason for rejecting his or her testimony, it can be one of several factors used in

14   evaluating the credibility of his or her subjective complaints. *See Rollins v.*

15   *Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001).

16        Here, the ALJ did not find evidence of malingering. *See generally* AR at

17   25-31. Thus, in rejecting plaintiff's credibility the ALJ was required to articulate

18   clear and convincing reasons. *See Benton*, 331 F.3d at 1040. The court is

19   persuaded that the ALJ provided clear and convincing reasons for his conclusion

20   that "[plaintiff's] statements concerning the intensity, persistence and limiting

21   effects of [his] symptoms are not credible to the extent that they are inconsistent

22   with" the ALJ's RFC finding. AR at 28.

23        First, the ALJ properly found problems in the disability determination made

24   by Chao-Hsiung Hsu, M.D., as a factor discrediting plaintiff's credibility. *Id.* at 28,

25   248-55, 262. Dr. Hsu has been plaintiff's treating physician since March 2009. *Id.*

26   at 248. In the "Multiple Impairment Questionnaire" he completed on April 12,

27   2010, Dr. Hsu indicated that, in an eight-hour workday, plaintiff could sit or

28   stand/walk no more than two hours each, and that the use of his left arm and hand

would be markedly limited in competitive eight-hour workday settings, though he would face no limitation in using his right hands and fingers for fine manipulation and minimal limitation in using his right arm for reaching. *Id.* at 250-52. Despite the relatively minimal to no limitation he found for plaintiff's right arm and hand, Dr. Hsu determined, without explanation, that plantiff could not lift or carry any weight. *Id.* at 251. Additionally, Dr. Hsu indicated that plaintiff was in "constant" pain, but he prescribed only Paxil (an anti-depression drug) and herbs (without specifying which herbs and for what purpose) and did not report or recommend any other treatments for pain. *Id.* at 252. In a letter dated July 10, 2010, Dr. Hsu opined that plaintiff was "totally disabled due to [left] cervical injury" and was "not capable of working due to his debilitating condition." After reviewing these two documents completed by Dr. Hsu, the ALJ determined that they "are of no persuasive value," as "they are egregiously indulgent, accommodative, exaggerated and unsupported by anything of record," including Dr. Hsu's own records. *Id.* at 28. The court agrees with the ALJ that Dr. Hsu's finding of total disability is not supported by the physician's own record. Thus, as plaintiff relies significantly on Dr. Hsu's opinion to establish his disability claim, the court finds plaintiff's credibility is undermined in part by the inconsistencies in Dr. Hsu's disability determination, as properly identified by the ALJ in his decision.

Second, the ALJ properly concluded that plaintiff's credibility is further undermined by plaintiff's refusal to take pain medications and sole reliance on "natural medicine" for pain management. *Id.* at 28, 47-48. Plaintiff testified at the hearing that he was "constantly in pain," but he indicated that he was "not taking any medications," because he did not "believe in medicine" and he did not want to "sleep all day" and "die numb." *Id.* at 46, 47. Plaintiff indicated that he only took "natural medicine" such as "Lacosomin for [his] joints" (plaintiff seems to have intended to say "glucosamine"), "shark oil for . . . joints," "Nutricom . . . for [his] nerves," and "Noni" (which plaintiff described as "like a bunch of vitamins"). *Id.* at

47, 48.  He stated that Nutricom, a dietary supplement, "helps [him] calm down" and the other "natural medicines" (all of which are also dietary supplements) help "keep [his] joints healthy."  *Id.* at 48.  Despite his apparent philosophical opposition to prescription medicine, however, he testified (as the ALJ noted) that he did take Paxil, an anti-depression prescription medication.  *Id.* at 29, 49, 252.  And despite his complaint of constant pain, plaintiff never identified any type of pain management regimen he was under or any evidence of past use of pain medicine that caused negative side effects such as drowsiness and numbness.  *Id.* at 46.

Plaintiff's decision to avoid to any type of medical treatment for pain may be sufficient to discount his credibility unless he offers a good reason for doing so.  *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (stating that the failure to seek treatment may be a basis for an adverse credibility finding unless there was a good reason for not doing so); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (the ALJ may properly rely on failure to seek treatment to discredit plaintiff's subjective complaints).  Other than his brief, vague, and unsubstantiated statement that he does not want to sleep all day or die numb from drugs, plaintiff has not offered any reason for avoiding pain medication.  *See* AR at 47.  Standing by itself, this vague statement might arguably be a sufficient reason; however, it is insufficient in light of plaintiff's apparently contradictory decision to take Paxil.  *Id.* at 47, 49, 252; *see Tonapetyan*, 242 F.3d at 1148 (an ALJ may engage in ordinary techniques of credibility evaluation, such as considering inconsistencies in a claimant's testimony); *see also Thomas*, 278 F.3d at 958-59 (inconsistency between the claimant's testimony and the claimant's conduct supported the ALJ's rejection of the claimant's credibility); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between the claimant's testimony and actions cited as a clear and convincing reason for rejecting the claimant's

testimony).  Contrary to plaintiff's argument in his briefing that "the ALJ provided no rationale" for discounting plaintiff's pain based on "his reluctance to take pain medications," the ALJ's citation of plaintiff's decision to avoid pain medicine but take Paxil is a persuasive factor that supports the ALJ's discrediting of plaintiff's credibility.  *Id.* at 28-29; Pl.'s Mem. at 13.

Third, the ALJ properly discounted plaintiff's credibility based on plaintiff's evasiveness in answering questions about his activities of daily living and financial status.  AR at 28.  In his decision, the ALJ indicated that at the hearing, plaintiff "simply would not relate any of his activities of daily living" and "[h]e denied income, even Food Stamps."  *Id.* at 29.  Plaintiff is correct to note in his briefing that he did testify elsewhere in his testimony about "try[ing] to study things," "go[ing] on the internet," "reading, [and] watching TV" on a daily basis.  *Id.* at 47; Pl.'s Mem. at 13.  But when the ALJ tried to elicit details about plaintiff's daily activities, plaintiff did not reveal anything, testifying that "there is nothing much" he does, that he does not go out, and that he does not want to work anymore.  AR at 52.  Although the ALJ's statement in his decision that plaintiff "simply would not relate any of his activities of daily living" is not completely accurate, the ALJ properly found that plaintiff's evasiveness in describing his daily activities undermined his credibility.  *Id.* at 29; *see Anderson v. Sullivan*, 914 F.2d 1121, 1123-24 (9th Cir. 1990) ("the ALJ had substantial evidence on which to find a lack of credibility based on [plaintiff's] evasiveness").  Similarly, the ALJ found plaintiff to be evasive in discussing the source of his financial support.  AR at 29, 52-53.  Despite the ALJ's repeated questioning, plaintiff offered no substantive response but insisted only that he had no money, was staying with a friend, was not receiving food stamps, and did not want to work anymore.  *Id.* at 52-53.  Contrary to what plaintiff asserts in his briefing, it was this evasiveness – not his "lack of resources and non-reliance upon public assistance" per se – that the ALJ properly found as an additional factor that hurt plaintiff's credibility.  Pl.'s Mem. at 14; *see Anderson,*

13

1   914 F.2d at 1123-24.

2       As for plaintiff's assertion that "the ALJ cited no reasons for disbelieving
3   [plaintiff's] testimony" of being no longer able to work as a security guard in
4   November 2008 due to "the 'phantom pain' in his left arm, his right shoulder pain,
5   and the concentration difficulties that his pain causes," the court agrees with
6   plaintiff.  In his decision, the ALJ appears to find plaintiff's engagement in
7   substantial gainful activity in 2007-2008 (well after the 2006 motorcycle accident
8   that caused injury to plaintiff's left arm) as a factor that discredits plaintiff's claim
9   of the onset of disability in October 2008.  AR at 28, 45-46, 182.  But substantial
10  gainful activity after the injury-producing incident cannot by itself be used to
11  discredit plaintiff's credibility.  As plaintiff testified, he may well have experienced
12  deterioration of his physical condition between 2006 and 2008, until plaintiff was
13  no longer able to work in late 2008.  *Id.* at 46.  Therefore, it was improper for the
14  ALJ to discount plaintiff's credibility based on plaintiff's engagement in substantial
15  gainful activity in 2007-2008.

16      Nevertheless, the ALJ's improper reliance on plaintiff's substantial gainful
17  activity to discount his credibility was harmless.  *See Batson v. Comm'r*, 359 F.3d
18  1190, 1195-97 (9th Cir. 2004) (the ALJ erred in relying on one of several reasons in
19  support of an adverse credibility determination, but such error was harmless because
20  the ALJ's remaining reasons and ultimate credibility determination were adequately
21  supported by substantial evidence in the record).  The ALJ's error does not "negate
22  the validity" of his ultimate credibility finding, and the ALJ's decision remains
23  "legally valid, despite such error."  *See Carmickle v. Comm'r*, 533 F.3d 1155, 1162
24  (9th Cir. 2008) (internal quotation marks and citation omitted).

25      Accordingly, the court finds that the ALJ provided clear and convincing
26  reasons, supported by substantial evidence, for discounting plaintiff's credibility
27  and subjective complaints.

28

14

**V.**

**CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits and dismissing this action with prejudice.


Dated: January 25, 2013

_____

HON. SHERI PYM
UNITED STATES MAGISTRATE JUDGE